IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CALEB H.,

          **Plaintiff,**

  v.                              Civil Action 2:21-cv-3831
                                  Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF**
**SOCIAL SECURITY,**

          **Defendant.**

## OPINION AND ORDER

Plaintiff, Caleb H., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties in this matter consented to the Undersigned pursuant to 28 U.S.C. § 636(c). (Docs. 6, 7). For the following reasons, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff protectively filed his applications for DIB and SSI on February 18, 2020, asserting disability beginning January 19, 2020, due to autism and depression. (Tr. 189–201, 214). After his applications were denied initially in June 2020, and on reconsideration in September 2020, the Administrative Law Judge (the "ALJ") held a telephone hearing on February 11, 2021, before issuing a decision denying Plaintiff's applications on March 23, 2021. (Tr. 17–70). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 6–11).

Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the administrative record, and the matter has been fully briefed. (Docs. 10, 13, 15, 16).

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's testimony from the administrative hearing:

> Although he needs to be reminded to take care of household chores, [Plaintiff] testified that he eats when he is hungry, can prepare his own meals, and bathes approximately three times a week when it is necessary. He is able to dress himself, go shopping, and work for extended periods at his part-time job. [Plaintiff] has personal interests and hobbies, such as entomology, and can complete somewhat complex tasks in furtherance of this interest. He is also interested in what he termed "world building," playing video games, and reading, all of which require at least a baseline ability to undertake and complete relatively complex tasks and/or maintain attention and concentration for extended periods of time.

(Tr. 27).

### B. Relevant Medical Evidence

The ALJ summarized the relevant medical records in determining Plaintiff's severe impairments as follows:

> [Plaintiff's] impairments are substantiated by multiple diagnostic assessments by Jillian Shellabarger, M.D., between at least May and December 2020, including following an initial psychiatric evaluation. Dr. Shellabarger specifically assessed [Plaintiff] with an anxiety disorder and psychophysiological insomnia; in addition, based on [Plaintiff]'s reported history, Dr. Shellabarger noted diagnoses of autism spectrum disorder and moderate major depressive disorder (see, for example, Exhibits 5F at 37, 103, 6F at 28, 8F at 2). Kenneth A. Stahl, LPCC, also assessed [Plaintiff] with an anxiety disorder and moderate major depressive disorder on multiple occasions between at least December 2019 and November 2020 (see, for example, Exhibits 5F at 2, 76, 6F at 31-2, 8F at 19, 22).
>
> [Plaintiff]'s autism spectrum disorder and depression are further substantiated by the assessments of Donna M. Owen, CNP. In February 2016, Ms. Owen assessed [Plaintiff] with a pervasive developmental disorder (Exhibit 11F at 18), and with suicidal ideation in November 2016 (Id. at 10). [Plaintiff]'s autism spectrum disorder is further substantiated by the February 2018 assessment of autism by Linda J. Hoover, CNP (Id. at 8). [Plaintiff]'s depression is further substantiated by the December 2019 clinical impression of suicidal ideation by Matthew L. Nyholm, M.D., following an emergency department examination (Exhibit 7F at 14).

(Tr. 23).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through June 30, 2021, and has not engaged in substantial gainful employment since January 19, 2020. (Tr. 22). The ALJ determined that Plaintiff has the following severe impairments: autism spectrum disorder, anxiety, depression. (Tr. 23). The ALJ, however, found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id*.).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ found that:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to performing simple, routine, and repetitive tasks. No more than occasional contact with supervisors and co-workers; no contact with the general public. No fast-paced production work or strict production quotas. [Plaintiff] is limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next.

(Tr. 26).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not sufficiently supported by the medical evidence and other evidence in the record." (Tr. 27).

Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff has no past relevant work. (Tr. 29). Considering his age, education, work experience, and the above RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as a cleaner II, kitchen helper, or stores laborer. (Tr. 29–30). So he concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time since January 19, 2020. (Tr. 30).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

In his Statement of Errors, Plaintiff contends that: (1) the ALJ erred at step three by failing to find that his autism spectrum disorder meets or equals the requirements of Listing 12.10; and (2) the RFC determination is not supported by substantial evidence. (Doc. 13 at 5–9). Upon review, the Court concludes that both errors are meritless.

### A. Step Three

Plaintiff alleges that the ALJ erred at step three by failing to find that his autism spectrum disorder meets or equals the requirements of Listing 12.10. (*Id.* at 5–7). Specifically, he

4

challenges the ALJ's evaluation of the paragraph B criteria. Defendant counters that the ALJ properly weighed the four paragraph B criteria and that the ALJ's conclusion is supported by substantial evidence. Upon review, the Court agrees with Defendant and concludes that Plaintiff's error is meritless.

*1. Step Three Standard*

At step three, the ALJ must compare Plaintiff's impairments to an enumerated list of medical conditions that the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Each Listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). Plaintiff's impairment must meet every element of a Listing before the Commissioner may conclude that he is disabled at step three of the sequential evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). It is not sufficient to come to close to meeting the conditions of a Listing. *Higgins v. Comm'r of Soc. Sec.*, No. 2:17-CV-1152, 2018 WL 5283940, at *4 (S.D. Ohio Oct. 24, 2018), *report and recommendation adopted*, No. 2:17-CV-1152, 2018 WL 6046319 (S.D. Ohio Nov. 19, 2018) (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989). It is Plaintiff's burden to provide sufficiently complete and detailed medical evidence to enable the Secretary to determine whether all listing elements are met. *Jones v. Comm'r*, 336 F.3d 469, 474 (6th Cir. 2003); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).

2.  *ALJ's Consideration of Listing 12.10*

Plaintiff alleges that the ALJ's determination that Plaintiff's autism spectrum disorder impairment did not meet or medically equal the level of severity of Listing 12.10 was erroneous. (Doc. 13 at 5–7). Listing 12.10 requires:

> A. Medical documentation of both of the following:
>     1. Qualitative deficits in verbal communication, nonverbal communication, and social interaction; and
>     2. Significantly restricted, repetitive patterns of behavior, interests, or activities.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>     1. Understand, remember, or apply information (see 12.00E1).
>     2. Interact with others (see 12.00E2).
>     3. Concentrate, persist, or maintain pace (see 12.00E3).
>     4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.10.

Specifically, Plaintiff challenges the ALJ's assessment of the paragraph B criteria. But the ALJ extensively considered whether Plaintiff satisfied the paragraph B criteria:

> In understanding, remembering, or applying information, [Plaintiff] has a moderate limitation. [Plaintiff]'s memory has been assessed as intact during mental health examination and treatment sessions (see, for example, Exhibits 5F at 37, 103, 8F at 2). While in school, [Plaintiff] was noted to have difficulty recalling "number facts," but did not have difficulty recalling "number words" (Exhibit 2F at 11). In a function report, [Plaintiff] stated that he needs reminders to take care of his personal needs and grooming, to go places, and to take his medications, although he uses telephone alarm reminders for medications (Exhibit 3E). He does not follow either written or spoken instructions well, and has general difficulty with memory (Id.). At the hearing, [Plaintiff] testified that he had an IEP while in high school, allowing him to work in smaller and "more focused" classes. [Plaintiff's mother], testified that [Plaintiff] will get frustrated when he does not understand directions and is unable to do whatever is being asked of him, which in turn increases his anxiety. Considering the clinical assessments that [Plaintiff] has an intact memory, but in deference to his subjective complaints of difficulties, the undersigned finds that [Plaintiff] has only a fair ability to function in this area.

In interacting with others, [Plaintiff] has a moderate limitation. [Plaintiff] has been noted to have difficulty with social interaction, communication, and working cooperatively in small groups, both while in school and in mental health examination and treatment sessions (see, for example, Exhibits 2F at 9, 5F at 36, 9F, 10F at 4). He has also been observed as cooperative, and noted to have normal interactions with peers (see, for example, Exhibits 5F at 37, 6F at 27, 8F at 6, 10F at 13, 11F at 15). He has been noted to have a good support system, including from his family, that he has been able to take advantage of during periods of "negative thoughts" (see, for example, Exhibits 5F at 19, 7F at 6). In the function report, [Plaintiff] stated that he is able to go shopping in person in stores "once or twice a month" for approximately an hour (Exhibit 3E). He interacts with others daily through video games, but does not go places regularly (Id.). While he is socially awkward, [Plaintiff] does not have difficulty getting along with others, and has never lost job because of workplace interpersonal difficulties (Id.). At the hearing, [Plaintiff] testified that he has difficulty reading and understanding people's emotions. He interacts primarily with people at work and friends online, but does not have many friends who he spends time with in person, and rarely leaves his house unless he is going to or from work. [Plaintiff] has social anxiety and difficulty being in large crowds without having someone he knows with him. He is able to go shopping by himself. At his part-time job at Dunkin Donuts, [Plaintiff] is able to interact with customers without difficulty, although this interaction is primarily limited to handing them coffee. He has some difficulties getting along with his supervisors, and minimal difficulties getting along with co-workers. Although [Plaintiff]'s social functioning deficits are significant, he is able to go shopping in stores regularly, interacts with others daily, and is able to get along with co-workers and customers, even if briefly. Overall, the undersigned finds that this represents a fair ability to function in this area.

With regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation. While in school, [Plaintiff] was noted to have difficulty completing multi-step problems, staying on task, and concentrating on his work (Exhibit 2F at 11, 13, 18). Mental health examination and treatment notes also reflect [Plaintiff]'s reports of having difficulty with concentration (see, for example, Exhibit 5F at 19), and his abilities in this area have been assessed as only fair (see, for example, Exhibits 5F at 73, 6F at 27). In the function report, [Plaintiff] stated that he has difficulty completing tasks, both in a timely manner and overall, due to attention deficits, which prevent him from focusing for more than "[a] matter of minutes" (Exhibit 3E). At the hearing, [Plaintiff] indicated that he is able to maintain attention and concentration sufficiently to undertake and complete relatively complex projects. He is interested in insects, and builds home environments in which to keep and feed them as pets. He also spends time reading, playing video games, and drawing, which he likens to "world building" and creating fictional universes, which he particularly enjoys. He can also prepare relatively simple meals for himself. [Plaintiff's mother] testified that [Plaintiff] has an insufficient attention span to complete full-time work, and he has never worked longer than a four-hour shift. Although [Plaintiff] has difficulty focusing on tasks,

7

> when the subject matter interests him, he is apparently able to engage in significantly more complex tasks and for extended periods of time. The undersigned finds that this represents a fair ability to function in this area.
>
> As for adapting or managing oneself, [Plaintiff] has experienced a moderate limitation. [Plaintiff]'s insight and judgment have been assessed as limited during mental health examination and treatment sessions (see, for example, Exhibits 5F at 37, 103, 6F at 27, 8F at 2). In the function report, [Plaintiff] stated that he does not handle stress or changes in routine well, as these trigger anxiety symptoms (Exhibit 3E). At the hearing, [Plaintiff] testified that he has panic attacks once or twice each month and occasional crying spells. When his depression symptoms spike, approximately every three or four months, he will have suicidal ideations, but has not undertaken any actions in this regard. He is able to take care of his personal needs, grooming, and household chores, although he often needs prompting from his mother to do so. He has become emotionally exhausted when trying to do full-time work in the past. [Plaintiff's mother] testified that [Plaintiff] is able to cook for himself, but requires daily "check-ins" to make sure he follows directions and completes household chores. When his anxiety increases, [Plaintiff] will "shut down" and have an "autism meltdown," often expressing suicidal thoughts. Given the only occasional instances of severe symptoms and [Plaintiff]'s ability to live primarily on his own for a number of years, the undersigned finds that he has a fair ability to function in this area.

(Tr. 24–25).

*Understand, Remember, or Apply Information*: First the ALJ evaluated Plaintiff's ability to understand, remember, or apply information. (Tr. 24). "This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00E. When evaluating this criterion, the ALJ may consider Plaintiff's ability to "[u]understand[] and learn[] terms, instructions, procedures; follow[] one- or two-step oral instructions to carry out a task; describe[e] work activity to someone else; ask[] and answer[] questions and provid[e] explanations; recogniz[e] a mistake and correcting it; identify[] and solv[e] problems; sequenc[e] multi-step activities; and us[e] reason and judgment to make work-related decisions." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00E.

Here, the ALJ considered that Plaintiff's memory was assessed as intact during mental health examination and treatment sessions (Tr. 24 (citing Tr. 397, 463, 569)). He also considered

8

Plaintiff's math IEP assessment (*id.* (citing Tr. 345)). The ALJ weighed subjective reports of Plaintiff's memory, for example Plaintiff's statements that he needs reminders for daily activities such as grooming and taking medication, he does not follow written or spoken instructions well, and he has difficulty with memory. (*Id.* (citing Tr. 224–231)). Ultimately, the ALJ concluded that Plaintiff had a moderate limitation based on the clinical assessments that Plaintiff had a normal memory, but still giving deference to Plaintiff's subjective complaints. (*Id.*).

*Interact with Others*: Next, the ALJ evaluated Plaintiff's ability to interact with others. (Tr. 24). "This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00E. Examples demonstrating this ability include: "cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." *Id.*

The ALJ considered Plaintiff's difficulties with social interaction, communication, and working cooperatively in small groups, while in school and in mental health examination and treatment sessions. (Tr. 24 (citing Tr. 343, 396, 607–10, 614)). But the ALJ also noted that Plaintiff has been observed as cooperative, has normal interactions with peers, has a good support system, has not lost a job due to workplace interpersonal difficulties, and interacts with others through video games. (Tr. 24 (citing Tr. 224–31, 379, 397, 526, 544, 573, 623, 648)). Again, the ALJ considered Plaintiff's hearing testimony, including his difficulty reading and understanding people's emotions, his lack of interaction with people in person, his tendency to stay at home, and his social anxiety. (Tr. 24). But he noted that Plaintiff testified he was able to interact with

9

customers and co-workers, although he has had some difficulties with his supervisors. (Tr. 24, 51–53). In sum the ALJ said "[a]lthough [Plaintiff]'s social functioning deficits are significant, he is able to go shopping in stores regularly, interacts with others daily, and is able to get along with co-workers and customers, even if briefly." (Tr. 24). So he concluded that Plaintiff has a moderate limitation in interacting with others.

*Concentrate, Persist, or Maintain Pace*: Then the ALJ evaluated Plaintiff's concentration, persistence, and pace. (Tr. 24–25). "This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00E. To assess Plaintiff, the ALJ may consider abilities such as: "[i]nitiating and performing a task that [Plaintiff] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." *Id.*

The ALJ looked at Plaintiff's school and treatment reports which noted his difficulty with concentration. (Tr. 24–25 (citing Tr. 345, 347, 352, 379)). Further, the ALJ considered that Plaintiff was assessed as having only fair abilities in concentration (Tr. 25 (citing Tr. 433, 526)), which corresponds to a moderate limitation, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F. The ALJ also took into account Plaintiff's own statements, including that he has difficulty completing tasks due to attention deficits (Tr. 25 (citing Tr. 224–31)), and his mother's testimony that he has an insufficient attention span and did not work more than four-hour shifts (Tr. 25, 64). But the ALJ went on to state that at the hearing, Plaintiff indicated he was able to maintain attention and

10

concentration to complete relatively complex projects because he was able to keep insects as pets and engaged in "world building" activities. (Tr. 25, 57). In sum, the ALJ stated that while Plaintiff "has difficulty focusing on tasks, when the subject matter interests him, he is apparently able to engage in significantly more complex tasks and for extended periods of time." (Tr. 25). Thus, the ALJ found Plaintiff had a moderate limitation in concentration, persistence, and pace.

*Adapt or Manage Oneself*: Finally, the ALJ assessed Plaintiff's ability to adapt or manage himself. (*Id*.). "This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00E. Examples demonstrating this ability include: "[r]esponding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." *Id.*

The ALJ considered that Plaintiff's insight and judgment were assessed as limited during mental health examination and treatment sessions. (Tr. 25 (citing Tr. 397, 463, 526, 569)). The ALJ also considered Plaintiff's statements that he does not handle stress of changes in routines well (*id.* (citing Tr. 224–231)), he has panic attacks once or twice a month, crying spells occasionally, and suicidal ideations when his depression symptoms spike every three to four months (Tr. 25, 54–55). However, the ALJ noted that Plaintiff was able to take care of many daily activities and household chores, although he did need prompting by his mother to do so. (Tr. 25). In conclusion, "[g]iven the only occasional instances of severe symptoms and [Plaintiff]'s ability to live primarily on his own for a number of years," the ALJ found the Plaintiff to be moderately limited in concentration, persistence, and pace. (*Id.*).

11

        *3.*      *ALJ's Evaluation is Supported by Substantial Evidence*

Plaintiff argues that the ALJ erred in finding Plaintiff only moderately limited in the four paragraph B criterion. (Doc. 13 at 5–7). He says the ALJ should have considered various symptoms and behaviors, including talking about a single subject excessively, responding negatively to directions, becoming easily frustrated, becoming upset when routines change, rarely being on task, suicidal ideation, severe agitation, impulsive behavior, difficulty communicating, crying spells, and difficulty understanding people's thoughts and feelings. (Doc. 13 at 6–7 (citing Tr. 267–270, 335–354, 387, 544)).

But when assessing whether Plaintiff met Listing 12.10, the ALJ carefully weighed the evidence, considering both symptoms and behaviors indicating Plaintiff's difficulty in the area and countervailing evidence that showed Plaintiff's ability to somewhat perform relevant tasks. Plaintiff points to evidence he says the ALJ should have considered. The ALJ, however, does not have to discuss every piece of evidence. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Moreover, the ALJ explicitly considered most of the evidence Plaintiff points to, including difficulty with directions, staying on task, changes in routine and communication, his crying spells, and his suicidal ideation. And he considered multiple sources of evidence, on which Plaintiff also relies, including Plaintiff's hearing testimony, his function report, his mother's testimony, and his IEP records. (Tr. 24–25).

Here, the ALJ evaluated the paragraph B criteria and supported his conclusions with ample citations to the record. Thus, the ALJ's determination that Plaintiff is moderately limited in the four paragraph B criteria, so he does not meet listing 12.10, is supported by substantial evidence. Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and*

*recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), aff'd, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). Accordingly, Plaintiff's alleged error is meritless.

**B. RFC**

Plaintiff next contends that the RFC determination is not supported by substantial evidence. (Doc. 13 at 8–9). Plaintiff argues that "the evidence discussed [in the step three alleged error] establishes that [he] would be off-task and absent from work well more than what would be tolerated in a full-time competitive work environment." (*Id.* at 8). Plaintiff does not elaborate further on this point, instead resting on the arguments made previously. The ALJ, Plaintiff argues, also erred in his evaluation of the medical opinions of Dr. Waggoner and Dr. Tangeman. (*Id.* at 8–9).

*1. RFC Standard*

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 155 (6th Cir. 2009). *See also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved

13

to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

When determining the RFC, the ALJ is charged with evaluating several factors, including the medical evidence (not limited to medical opinion testimony) and the claimant's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). The RFC assessment must be based on all the relevant evidence in the case file. 20 C.F.R. § 416.945(a)(1).

Plaintiff filed his application after May 23, 2017, so it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017). Taken together, the regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

Regarding two of these categories (medical opinions and prior administrative findings), an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from the claimant's medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability

14

programs policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). An ALJ may discuss how he or she evaluated the other factors but is not generally required to do so. *Id.*

Thus, the role of the ALJ is to articulate how they considered medical opinions and how persuasive they found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ used the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

   2. *ALJ's RFC Evaluation*

The ALJ determined that Plaintiff had "residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to performing simple, routine, and repetitive tasks. No more than occasional contact with supervisors and co-workers; no contact with the general public. No fast-paced production work or strict production quotas. The claimant is limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next." (Tr. 26).

The ALJ's role is to determine the RFC based on his evaluation of medical and non-medical evidence. "Ultimately, 'the ALJ must build an accurate and logical bridge between the evidence and his conclusion.'" *Davis v. Comm'r of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, No. 2:19-CV-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020) (quoting *Waye v. Comm'r of Soc. Sec.*, No. 1:18-CV-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019), *report and recommendation adopted*, No.

15

1:18CV201, 2019 WL 718542 (S.D. Ohio Feb. 20, 2019)). That is what the ALJ did here.

First, the ALJ referred to his step three analysis: "The claimant's mental health-based work-related functional limitations are discussed above in analyzing the paragraph B criteria." (*Id.*); *see also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir 2014) (reading the ALJ's opinion as a whole). The ALJ explained how his prior reasoning supports various restrictions in the RFC:

> [Plaintiff's] deficits in understanding and memory and in concentration and pace underlie the limitations to simple and routine tasks without production quotas or pacing requirements, as any more complex tasks could reasonably tax his intellectual abilities, and his limited ability to remain focused on the task at hand could reasonably prevent him from meeting set standards. The claimant's social functioning deficits underlie the limitation on social interaction, as more frequent or extensive contact could trigger his anxiety symptoms. The claimant's adaptive deficits underlie the limitation on workplace changes and further underlie the production and pacing limitations, as these conditions could exceed his ability to deal with workplace stressors.

(Tr. 27). The medical and non-medical evidence the ALJ relied on was discussed in depth above. And the ALJ took care to explain how he crafted the RFC with reference to Plaintiff's functional limitations which he described in detail at step three. The ALJ's RFC determinations are well reasoned and supported by the record as a whole. As was true at step three, Plaintiff fails to establish that the ALJ's RFC determination is not supported by substantial evidence. Plaintiff's disagreements with the ALJ's analysis is not enough. "[I]f substantial evidence supports the ALJ's decision, the Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).

Additionally, the ALJ carefully considered the medical opinions of Drs. Waggoner and Tangeman. He was partially persuaded. (Tr. 28). "Both reviewing doctors opined that [Plaintiff] is able to understand and remember both simple and some more complex tasks, but should not be

16

required to perform more than short-cycle work, be subject to strict pacing or production requirements, or have a work routine that is subject to change without advance notice. In addition, both Dr. Waggoner and Dr. Tangeman recommended that [Plaintiff] be limited 'to work with a small group of familiar coworkers in a less public setting where supervisory feedback is constructive.'" (Tr. 28, 73–86, 89–102). The ALJ found most of these limitations to be consistent with the record and Plaintiff's subjective complaints. Thus, he included these supported limitations in the RFC. For example, the RFC limits Plaintiff to "simple, routine, and repetitive tasks" and restricts his contact with supervisors, co-workers, and the public. (Tr. 26, 73–86, 89–102).

But the ALJ disagreed with two of the opined limitations. The ALJ "could not find evidence in the record to support the notion that [Plaintiff] requires either advanced notice of work routine changes or only constructive feedback . . . ." (*Id.*). He went on to explain:

> [Plaintiff] and [Plaintiff's mother] both testified that he is able to respond to suggestions and reminders to take care of household chores and grooming needs, and the online gaming that [Plaintiff] frequently engages in likely requires adapting to changing conditions, even if those conditions are simulation-based. Based on this testimony regarding [Plaintiff]'s actual lived experiences, the undersigned therefore finds that these specific opinions by the reviewing doctors are unnecessary, and represent more a preference than a psychological need.

(Tr. 28).

In finding these limitations unsupported by the record, the ALJ cites Plaintiff's and his mother's testimony that he was able to respond to feedback, like suggestions and reminders, and his online gaming activities required him to adapt to changes without advanced notice. (*Id.*).

Further, the ALJ's assessment of Plaintiff's difficulty with directions and change at step three bolsters his evaluation of Dr Waggoner's and Dr. Tangeman's opinions. This determination is considered here because the ALJ's opinion should be read as a whole. *Hill*, 560 F. App'x at

17

551. In sum, the ALJ considered Plaintiff's adaptive deficits, such as limited insight and judgment, his statements that he does not handle changes in routines well, panic attacks, crying spells, and depression symptoms including suicide ideation. (Tr. 25 (citing Tr. 54–55, 224–231, 397, 463, 526, 569)). Elsewhere, the ALJ considered Plaintiff's mother's testimony that he has difficulty understanding directions. (Tr. 24). Still, the ALJ noted that Plaintiff was able to take care of many daily activities and household chores, although he did need prompting by his mother to do so. (Tr. 25). In line with these adaptive deficits, the ALJ limited Plaintiff to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next. (Tr. 26). Thus, while the ALJ found the limitations in Dr. Waggoner's and Dr. Tangeman's opinions overly restrictive, he supported this conclusion and included RFC restrictions in line with his assessment of the record.

Plaintiff argues that the ALJ should have found that evidence did in fact support Dr. Waggoner's and Tangeman's opinions in full. Specifically, he notes his IEP records which show that he responded negatively to commands and directions, became frustrated easily, and was upset when routines change. (Tr. 335–354). An ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Houston v. Saul*, No. 1:20-CV-1371, 2021 WL 2635376, at *14 (N.D. Ohio June 25, 2021). Here, however, the ALJ in fact considered these adaptive limitations, as discussed above, even though he cited different sources in the medical record. And again, "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). At the end of the day, Plaintiff fails to explain how the ALJ's failure to consider this evidence when assessing the persuasiveness of Dr. Waggoner's opinion

18

and Tangeman's opinion was harmful to him, especially given the adaptive restrictions the ALJ included in the RFC.

In sum, the ALJ's explanation for why the medical opinions were only partially persuasive afforded the Court the opportunity to conduct a meaningful review, and substantial evidence supports the evaluation of the medical opinions. The ALJ's RFC analysis and explanation allowed the Court to conduct a review of the decision. The ALJ built a logical bridge between the evidence—including Plaintiff's medical records, hearing testimony, and medical opinions—and his conclusion. Importantly, the RFC reflects various limitations: "The claimant is limited to performing simple, routine, and repetitive tasks. No more than occasional contact with supervisors and co-workers; no contact with the general public. No fast-paced production work or strict production quotas. The claimant is limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next." (Tr. 26). Accordingly, the Court finds no error.

### C. CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 13) and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.

Date:  August 15, 2022 　　　　　　　　　　　　　s/ Kimberly A. Jolson
　　　　　　　　　　　　　　　　　　　　　　　　　　KIMBERLY A. JOLSON
　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE